Jerold C. Feuerstein, Esq. (JCF-9829)
360 Lexington Avenue, Suite 1200
New York, New York 10017
Telephone: 212-661-2900
Facsimile: 212-661-9397

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x    Civil Action No. 11-1543
EASTERN SAVINGS BANK, FSB,                                                    Filed: March 29, 2011

            Plaintiff,

 -against-

PETER K. STREZ, CATHERINE A. STREZ A/K/A
CATHERINE A. KELLEY, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, and "JOHN
DOE #1 through JOHN DOE #12", the last twelve names
being fictitious and unknown to plaintiff, the persons or
parties intended being the tenants, occupants, persons or
corporations, if any, having or claiming interest upon the
premises described in the Complaint,

            Defendants.
-------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(a)

            KRISS & FEUERSTEIN LLP
            360 Lexington Avenue, Suite 1200
            New York, New York 10016
            (212) 661-2900

            By: /s/: Jerold C. Feuerstein
              Jerold C. Feuerstein, Esq. (JCF-9829)
            Attorneys for Plaintiff Eastern Savings
            Bank, FSB

## PRELIMINARY STATEMENT

Plaintiff Eastern Savings Bank, fsb ("**Plaintiff**" or "**Eastern**") respectfully submits this memorandum of law in support of its motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56(a) and for an Order striking the Affirmative Defenses pursuant to Fed. R. Civ. P. Rule 12(f) and dismissing the Counterclaims, set forth in Defendants Peter K. Strez's and Catherine A. Strez a/k/a Catherine A. Kelley's (collectively "**Defendants**") Amended Answer, filed with this Court on March 12, 2012, as well as for all other relief requested in Plaintiff's Notice of Motion submitted herewith.

Briefly, this is a straight forward foreclosure action involving a defaulted loan secured by a mortgage on a residential property in Queens County. After entering into the loan in June 2008, the borrower stopped making monthly debt service payments commencing in May 2010. A more extensive factual background of this matter is set forth in the accompanying Statement of Material Facts and Affidavit of Terry Brown (the "**Brown Affidavit**"), *and the terms defined therein are incorporated by reference herein*.

It is respectfully submitted that Defendants' Answer, which consists of six (6) vague, conclusory, and self-serving Affirmative Defenses and four (4) similarly meritless Counterclaims, does not raise a question of fact precluding Summary Judgment. All of Defendants' Affirmative Defenses and Counterclaims not only lack the necessary specificity and factual accuracy to adequately defeat Summary Judgment, but furthermore fail as a matter of law.

## SUMMARY JUDGMENT IS PROPER BECAUSE EASTERN HAS MADE A PRIMA FACIE CASE TO FORECLOSE THE MORTGAGE

Rule 56 of the Federal Rules of Civil Procedure provides for the grant of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file,

2

together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* In re Victory Veal, Inc., 186 B.R. 22, 27 (Bkrtcy. E.D.N.Y. 1995), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *See also* Builders Bank v. Charm Developments II, LLC, 2010 WL 3463142 (E.D.N.Y. 2010). "The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion." In re Thomson McKinnon Securities Inc., 132 B.R. 9, 11 (Bkrtcy. S.D.N.Y. 1991). *See also* Celotex Corp., 477 U.S. 317. Moreover, "the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position by bringing to the attention of the Court some favorable indication that its version of relevant events is not a meritless allegation." In re Victory Veal, Inc., 186 B.R. at 28. *See also* Builders Bank, 2010 WL 3463142 at 2 ("The party opposing summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.'" *quoting* Fed.R.Civ.P. 56(e)).

Indeed, "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, at 71 (2d Cir. 1996). Furthermore, "[c]ases seeking recovery on promissory notes are particularly suitable for disposition via summary judgment, as the moving party need merely establish the absence of a genuine issue as to execution and default." Einstein v. Kelly Music & Entm't Corp., 1998 WL 289734 at 4 (S.D.N.Y.) *See also*, Pereira v. Cogan, 267 B.R. 500, 506 (S.D.N.Y. 2001).

In New York, "[i]n an action to foreclose on a mortgage, the essential requirements of the plaintiff's case are proof of the existence of an obligation secured by a mortgage, and a default on that obligation." U.S. v. Freidus, 769 F.Supp. 1266, 1277 (S.D.N.Y. 1991). *See also, e.g.*,

3

Campaign v. Barba, 805 N.Y.S.2d 86 (2d Dep't 2005); Household Fin. Realty v. Winn, 796 N.Y.S.2d 533, 534 (2d Dep't 2005). Once the plaintiff lender meets its burden of making a *prima facie* showing of entitlement to summary judgment, the burden shifts to the defendant mortgagor to demonstrate by admissible evidence the existence of a genuine triable issue of fact with respect to a bona fide defense. *See, e.g.*, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Fleet Nat'l Bank v. Olasov, 16 A.D.3d, 374, 793 N.Y.S.2d 52 (2d Dep't 2005); U.S. Bank Trust Nat'l Ass'n Tr. v. Butti, 16 A.D.3d 408, 792 N.Y.S.2d 505, 506 (2d Dep't 2005).

Here, Plaintiff has put forth a copy of the duly executed Note and Mortgage, proof of mailing of the requisite default notice, and an affidavit from a Senior Asset Manager of Eastern with direct knowledge of the facts and circumstances attesting to the loan default. Accordingly, the documentary evidence submitted demonstrates that no issues of fact exist, and thus Plaintiff is entitled to summary judgment unless Defendants "set forth 'concrete particulars' showing that a trial is needed." M&T Mortg. Corp. v. White, 2010 WL 3420480 at 7 (E.D.N.Y. 2010) *quoting* Cousin v. White Castle System, Inc., 2009 WL 1955555, at 4 (E.D.N.Y. 2009). *See also* Builders Bank, 2010 WL 3463142; Bank of Albany v. Fioravanti, 51 N.Y.2d 648,648 (1980).[1]

## THE DEFENSES ALLEGED ARE FACTUALLY AND LEGALLY BASELESS

Here, Defendants' Answer reveals that they do not deny making, executing and/or delivering the Note and Mortgage, nor do they deny their payment default as recited in the Complaint. Instead, Defendants assert six (6) Affirmative Defenses and four (4) Counterclaims, without pleading adequately specific and/or accurate supporting facts. None of these claims

---

[1] Under New York law, "[i]n order to establish its prima facie entitlement to summary judgment in a foreclosure action, a plaintiff must submit the mortgage and unpaid note, along with evidence of default." U.S. Bank Nat. Assn. TR U/S 6/01/98 [Home Equity Loan Trust 1998-2] v. Alvarez, 49 A.D.3d 711, 854 N.Y.S.2d 171 (2d Dep't 2008). Once the plaintiff has established its prima facie entitlement to summary judgment, "[t]he burden then shifts to the defendant to demonstrate 'the existence of a triable issue of fact as to a bona fide defense to the action.'" Rose v. Levine, 52 A.D.3d 800, 801, 861 N.Y.S.2d 374 *quoting*, Mahopac Nat. Bank v. Baisley, 244 A.D.2d 466, 664 N.Y.S.2d 345 (2d Dep't 1997)).

4

have legal merit. Defendants cannot defeat a motion for Summary Judgment with nothing more than unsupported assertions or allegations in their pleadings. Fed. R. Civ. P. 56(e); Cifarelli v. Vill of Babylon, 93 F.2d 47, 51 (2d Cir. 1996). Likewise, Defendants cannot rely on mere conclusory allegations, and as such, Defendants' affirmative defenses should be stricken in their entirety. Morris v. Landau, 196 F.3d 102, 109 (2d Cir. 1999).

**First Affirmative Defense**

The First Affirmative Defense raised by Defendants claims that Plaintiff engaged in "deceptive and fraudulent practices constituting 'predatory lending' as contemplated by State and Federal law; specifically, Plaintiff intentionally exercised improper, inadequate or nonexistent due diligence regarding Defendants' ability to repay the amounts due under the note and mortgage." This allegation constitutes an overly broad, self-serving conclusion of law, without adequate factual support to overcome Summary Judgment, and further, without citing any actual law or statute ostensibly violated by Plaintiff. *See* Fed. R. Civ. P. 56(e); Cifarelli v. Vill of Babylon, 93 F.2d 47, 51 (2d Cir. 1996). A claim sounding in fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ.P. 9(b); *see also*, In re Ridley, 453 B.R. 58 (Bkrtcy. E.D.N.Y. 2011). Further, under New York law, when it comes to allegations of fraud, "[t]o establish a cause of action for … fraud, the plaintiff must plead the following elements: (1) a false representation of material fact, (2) with intent to defraud, (3) reasonable reliance on the misrepresentation and (4) causation of damages to the plaintiff." Sutherland v. Remax 2000, 872 N.Y.S.2d 693 (N.Y.Sup. 2008). Further, N.Y. C.P.L.R. §3016(b) provides, "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." "Bare allegations of fraud, which merely list the material elements of fraud without any supporting detail, are insufficient to satisfy the pleading

5

requirements of CPLR 3016 (subd. [b])." Gorman v. Gorman 451 N.Y.S.2d 455 (3d Dep't 1982). "Conclusory allegations of fraud will not be sufficient." Dumas v. Fiorito, 786 N.Y.S.2d 106 (2d Dep't 2004). Defendants' First Affirmative Defense fails to put forth sufficient factual allegations to support any claim of fraud.

Beyond failing to point to any law or statute actually violated by Plaintiff, Defendants claim, generally and without specificity, that Plaintiff failed to do adequate due diligence as to the Defendants ability to repay the subject loan. A copy of Defendants' application faxed to Eastern by the Defendants' broker on behalf of Defendants on March 18, 2008 is annexed hereto as **Exhibit "M"**. Another copy of this application, dated and signed as of the closing date of the subject loan, with slightly updated information, is annexed hereto as **Exhibit "K"**. Both forms of application are initialed and signed by Defendants on multiple pages, thereby constituting confirmation on the part of Defendants of the information contained therein. The applications contain extensive information as to the Defendants' various debts, liabilities, income and assets at the time of applying for and closing the subject loan. Defendants did not attempt to make any corrections by hand to the applications. The application executed by Defendants at closing reveals monthly income of greater than $24,000, with monthly expenses of approximately $5,600. The information relied upon by Plaintiff and evidenced by these application forms in connection with the subject loan was supplied by Defendants. If the information was not accurate, then Defendants had a duty to inform Plaintiff and should not have sat silent in the face of facts requiring them to speak. Since Defendants were aware of their financial ability to repay the subject loan at the time they executed the loan documents, their contention, now, that Plaintiff misrepresented their income must fail. See Sutherland v. Remax 2000, 20 Misc.3d 1131(A), Slip Copy, 2008 WL 3307201 (N.Y. Sup. 2008) ("[A] claim for predatory lending must be dismissed … where the plaintiff is 'well aware of her own financial circumstances at the

6

time she entered into [an] agreement.'", *citing* Frank v. North American Foreclosure Solutions, 12 Misc.3d 1191(A) (Sup.Ct. Queens Co.2006)); *see also*, LPP Mortgage, Ltd. v. Card Corp., 793 N.Y.S.2d 346 (N.Y.A.D. 1t Dept. 2005). Thus, if Defendants were not in a position to afford the subject loan as they now apparently claim, then they misrepresented this information to Plaintiff and should not benefit from their own misdeeds.

Thus, Defendants' First Affirmative Defense raises no triable issues of fact, and it should not defeat Plaintiff's motion for Summary Judgment.

### Second Affirmative Defense

Defendants' Second Affirmative defense claims that Plaintiff engaged in "deceptive and fraudulent practices constituting 'predatory lending' as contemplated by State and Federal law; specifically, Plaintiff's intentional and improper placement of Defendants into sub-prime loan products resulted in excessively high interest rates, longer loan terms and impaired refinancing flexibility to the sole benefit of the lender." This defense is inadequately plead, failing to cite any law or statute that Plaintiff has allegedly violated, much less any actual factual allegation to support such defense. Defendants cannot defeat a motion for Summary Judgment with nothing more than unsupported assertions or allegations in their pleadings. Fed. R. Civ. P. 56(e); Cifarelli v. Vill of Babylon, 93 F.2d 47, 51 (2d Cir. 1996). Likewise, Defendants cannot rely on mere conclusory allegations, and as such, Defendants' affirmative defenses should be stricken in their entirety. Morris v. Landau, 196 F.3d 102, 109 (2d Cir. 1999).

*Assuming* arguendo that Defendants are referring to New York Banking Law §6-M, which defines and governs so-called "sub-prime" loans in New York State, it simply is not applicable to the subject loan as it was originated (June 13, 2008) prior to the effective date of said statute, being September 1, 2008. 2008 Sess. Law News of N.Y. Ch. 472 (S. 8143–A), §28.

7

Therefore, Defendants' Second Affirmative Defense cannot stand as a bar to the grant of Summary Judgment in favor of Plaintiff.

**Third Affirmative Defense; Fourth Affirmative Defense; Fifth Affirmative Defense; First Counterclaim; Second Counterclaim; and Third Counterclaim**

Defendants' Third Affirmative Defense, Fourth Affirmative Defense, Fifth Affirmative Defense, First Counterclaim, Second Counterclaim and Third Counterclaim are all predicated on the false allegation that the subject loan violates New York Banking Law §6-L in various ways. New York Banking Law §6-L defines and governs so-called "high-cost" loans in New York State. As will be demonstrated hereinbelow, the subject loan does not qualify as a "high-cost home loan" under New York Banking Law §6-L, and thus, all of Defendants' Affirmative Defenses and Counterclaims founded upon such are legally without merit.

First, with regards to both Banking Law §§ 6-L and 6-M, Plaintiff is exempt as it is governed by federal law that preempts such state statutes. Plaintiff is a federal savings bank, governed by the Office of Thrift Supervision ("**OTS**", now known as the Office of the Comptroller of Currency) and therefore believes federal law and OTS regulations pre-empt Banking Law §§ 6-L and 6-M. See Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 and Monroig v. Washington Mut. Bank, FA, 800 N.Y.S.2d 416, 418 (2 Dep't 2005) ("OTS regulations expressly authorize OTS to promulgate regulations that preempt state laws affecting the operations of federal savings associations (see 12 CFR 560.2[a]), i.e., federal preemption. The types of state laws that are expressly preempted include those relating to credit terms, loan related fees, disclosure or advertising; and processing, origination, or servicing of loans..."). "Congress intended to have a significant presence in the regulation of federal savings institutions. HOLA [Home Owners Loan Act of 1933] created the OTS for the purpose of administering the statute, in order to promulgate regulations involving the operation of federal savings associations." People ex rel. Cuomo v. First American Corp., 24

8

Misc.3d 672, at 677, 878 N.Y.S.2d 860 (NY Sup. 2009) *citing,* <u>Fidelity Fed. Sav. & Loan Assn. v De la Cuesta</u>, 458 US 141, 144-145 (1982). "In accordance with the broad mandate of HOLA, the OTS promulgated two regulations that address preemption… 12 CFR 560.2 (a) states that Congress intends to occupy the legislative field with respect to state laws that affect the operations of federal savings associations. Subdivision (b) contains a list of types of state laws preempted by OTS regulation, including state laws purporting to impose requirements regarding licensing by creditors, the ability of creditors to obtain mortgage insurance, terms of credit, loan-related fees such as prepayment penalties, escrow accounts, access to credit reports, disclosure and advertising, and '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages' (12 CFR 560.2 [b] [10])." <u>People ex rel. Cuomo v. First Americal Corp</u> at 678. "Thus, 12 CFR 560.2 (a) preempts state laws that have a direct impact on the banking and lending activities of a federal savings association, such as those listed in section 560.2 (b), while section 560.2 (c) preserves state laws that only incidentally affect the banking and lending activities of a federal savings association." <u>Id</u> at 678. Thus, Defendants' Affirmative Defenses and any Counterclaims that allege that Plaintiff violated Banking Law Section 6-L should be dismissed as a matter of law because the statute is pre-empted by federal regulations.

Moreover, as a matter of fact, the subject loan does not qualify as a "High-Cost Home Loan". Banking Law §6-L(d) states "A 'High-cost home loan' means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of this subdivision."

> Banking Law §6-L(g) states in relevant part, "*Thresholds*" means:
>
> > (i) For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeds eight percentage points over the yield on treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the

9

> lender; or *for a subordinate mortgage lien, the annual percentage rate of the home loan at consummation of the transaction equals or exceeds nine percentage points over the yield on treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for extension of credit is received by the lender;…* or
>
> (ii) *The total points and fees exceed: five percent of the total loan amount* if the total loan amount is fifty thousand dollars or more;… the following discount points shall be excluded from the calculation of the total points and fees payable by the borrower…
>
> (*emphasis added*)

For Banking Law 6-L, to be applicable to this matter, it must "qualify as a 'high-cost home loan', which definition must also must be satisfied to trigger the statute. This is defined as a home loan whose interest rate is more than 8% over the yield of treasury securities with a maturity date comparable to the length of the loan (9% if it is a junior/subordinate loan), or one where the total of points and fees payable by the borrower is more than 5% of what was borrowed if the loan was for over $50,000…" Alliance Mortg. Banking Corp. v. Dobkin, 862 N.Y.S.2d 812, 812 (Sup. Ct. Nassau 2008).

The subject loan does not meet the threshold set forth in Banking Law §6-L(g)(i). Here, the Mortgage is actually a second lien against the Subject Property, subordinate to the lien of that certain Mortgage among Defendants and Emigrant Mortgage Company, Inc., dated January 13, 2003 and recorded in the Office of the Clerk of the County of Queens on July 8, 2003 under CRFN: 2003000216574 (the "**Emigrant Mortgage**"). A copy of the Emigrant Mortgage is attached hereto as **Exhibit "L"**, along with its attendant recording pages. As set forth in the Brown Affidavit, Eastern received Defendants' application for credit on or about **March 18, 2008**. A copy of the Defendants' application faxed to Eastern by the Defendants' broker on behalf of Defendants on March 18, 2008 is annexed hereto as **Exhibit "M"**. The annual percentage rate ("APR") in effect for Treasury Securities having a 30 year maturity on **February**

10

**15, 2008** was **4.58%**[2]. The APR for the subject loan, as set forth in the Truth-In-Lending Disclosure Statement signed by Defendants on June 13, 2008, reflects that the APR of the Note is **13.149%**. A copy of the signed Truth-In-Lending Disclosure Statement is annexed hereto as **Exhibit "O"**. Since the APR is less than **13.58%**, which is nine points above the applicable Treasury Security having a 30-year maturity date, the subject loan is not a High Cost Home Loan as defined by Banking Law §6-L(g)(i).

The subject loan is also not a High Cost Home Loan pursuant to Banking Law §6-L(g)(ii), as the points and fees paid by Defendants did not exceed 5% of the subject loan amount. The "Threshold" set forth in Banking Law §6-L(g)(ii), and the points and fees which are included in this calculation, were discussed in detail in the case of <u>LaSalle Bank, N.A., II v. Shearon</u>, 23 Misc.3d 959, at 965, 881 N.Y.S.2d 599 (NY Sup. 2009), which stated in pertinent part:

> "The statute further defines 'points and fees' as: '(i) All items listed in 15 U.S.C. § 1605 (a) (1) through (4), except interest or the time-price differential; (ii) All charges for items listed under §226.4(c)(7) of title 12 of the code of federal regulations, as amended from time to time, but only if the lender receives direct or indirect compensation in connection with the charge or the charge is paid to an affiliate of the lender; otherwise, the charges are not included within the meaning of the phrase 'points and fees'; (iii) All compensation paid directly or indirectly to a mortgage broker, including a broker that originates a loan in its own name in a table-funded transaction, not otherwise included in subparagraphs (i) and (ii) of this paragraph; (iv) The cost of all premiums financed by the lender, directly or indirectly, for any credit life, credit disability, credit unemployment, or credit property insurance, or any other life or health insurance, or any payments financed by the lender directly or indirectly for any debt cancellation or suspension agreement or contract, except that insurance premiums calculated and paid on a monthly basis shall not be considered financed by the lender…The Banking Law incorporates the United States Code and the Code of Federal Regulations. 15 USC § 1605 (a) (1)-(4) includes the following points and fees:(1) . . . [A]ny amount payable under a point, discount, or other system of additional charges. (2) Service or carrying charge. (3) Loan fee, finder's fee, or similar charge. (4) Fee for an investigation or credit report…

---

[2] The daily U.S. Treasure Rate for February 15, 2008 is annexed hereto as **Exhibit "N"**. Plaintiff asks that the Court take judicial notice of this fact.

11

The following charges from 12 CFR 226.4 are exempt in calculating the threshold requirement in high cost home loans except in the event that 'the lender receives direct or indirect compensation in connection with the charge or the charge is paid to an affiliate of the lender': '(7) Real-estate related fees. The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount: (i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes. (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents. (iii) Notary and credit report fees. (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations. (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge." LaSalle Bank, N.A., II v. Shearon, 23 Misc.3d 959, at 965-966, 881 N.Y.S.2d 599 (NY Sup. 2009).

The loan charges paid by Defendants were all set forth on a HUD-1 Settlement Statement ("**Settlement Statement**"), executed by Defendants at the closing on June 13 , 2008. A copy of the Settlement Statement is annexed hereto as **Exhibit "P"**. The following line items on the Settlement Statement are included as "points and fees":

| Loan Discount Fee of 2.0% | $8,000.00 | Line 802 |
|---|---|---|
| Mortgage Broker Fee | $4,000.00 | Line 807 |
| Tax Service Fee | $67.00 | Line 808 |
| Flood Certification Fee | $16.00 | Line 809 |
| Loan Processing Fee | $350.00 | Line 810 |
| Underwriting Fee | $750.00 | Line 811 |
| Document Preparation | $200.00 | Line 1105 |
| Settlement Fee | $350.00 | Line 1101 |
| Loan Document Delivery Fee | $5.00 | Line 1307 |
| **TOTAL FEES AND POINTS** | **$13,738.00** | |

Thus the total fees and points charged to Defendant total **$13,738.00**. This is only **3.43%** of the total loan amount, less than the 5% required to place this loan within the ambit of the statute. The remainder of the charges itemized on the Settlement Statement consist of actual expenses incurred, which are specifically exempted from "fees and points" under the applicable statutes. Therefore, the subject loan does not meet the "Threshold" set forth in Banking Law §6-L(g)(ii).

12

In the absence of proof that Defendants' loan is a "High Cost Home Loan", she is not entitled to the protections of Banking Law §6-L. The mere fact that Defendants may have borrowed more than they can afford does not constitute a valid defense to this foreclosure action or place the subject loan within the purview of Banking Law §6-L. *See* <u>Alliance</u> at 812. As a result, Defendants' Third Affirmative Defense, Fourth Affirmative Defense, Fifth Affirmative Defense, First Counterclaim, Second Counterclaim and Third Counterclaim are of no effect and should not prevent this Court from granting Plaintiff's motion for Summary Judgment, thereby striking such Affirmative Defenses and dismissing such Counterclaims.

### Sixth Affirmative Defense

Defendants' Sixth Affirmative Defense states that Plaintiff failed to provide the requisite predicate default notices prior to commencing this action. This defense is clearly refuted by the documentary evidence submitted herewith by Plaintiff. Plaintiff complied with RPAPL §§1304(1) and 1304(2)(4), as well as with the terms of the Note and Mortgage (*see* Sections 6(c) and 7 of the Note, annexed hereto as **Exhibit "A"**, and Sections 15 and 20 of the Mortgage, annexed hereto as **Exhibit "B"**), by sending the 30-day and 90-day notices to Defendants at the Property, copies of which notices are annexed hereto as **Exhibit "C"**. Defendants put forth no factual evidence to rebut this. Thus, Defendants' Sixth Affirmative Defense is without merit, factually baseless, and do not pose a bar to the grant of Summary Judgment in favor of Plaintiff as a matter of law.

### Fourth Counterclaim

In their Fourth Counterclaim, Defendants make a claim for their attorneys' fees incurred in connection with defending this action, assuming they do so successfully. As demonstrated in detail in this Memorandum of Law, and all pleadings filed in connection with this Motion for Summary Judgment, Defendants do not have a legally cognizable defense to this foreclosure

13

action with merit. As such, they will not be successful in defending this motion or this action, and thus, there shall be no obligation at law, or otherwise, requiring Plaintiff to reimburse Defendants for their attorneys' fees in connection herewith. In fact, as provided in Section 7 of the Mortgage, annexed hereto as **Exhibit "B"**, it is and shall be Defendants' obligation to reimburse Plaintiff for all attorneys' fees, and other costs and expenses, expended by it in connection with this action, with interest, in addition to the full outstanding debt of the subject loan.

## **CONCLUSION**

In conclusion, Plaintiff has established its *prima facie case* for Summary Judgment by producing the duly executed Note, Mortgage, and Affidavit from a senior employee at Eastern attesting to Defendants' default under said documents. In opposition, Defendants fail to dispute that they received the proceeds of this loan or their subsequent default, and instead set forth six (6) Affirmative Defenses and four (4) Counterclaims that are nothing more than unsubstantiated, conclusory assertions, none of which raise any viable defenses to the instant foreclosure action or present any triable issues of fact. Without any factual specificity, they further fail as a matter of law. Based on the foregoing, Plaintiff's motion for Summary Judgment should be granted in its entirety.

Dated: September 25, 2012

/s/: Jerold C. Feuerstein
Jerold C. Feuerstein