UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EASTERN SAVINGS BANK, FSB,

                     Plaintiff,

      -against-                              MEMORANDUM & ORDER
                                               11-CV-1543 (ENV)(LB)
PETER K. STREZ, CATHERINE A. STREZ,
CITY OF NEW YORK ENVIRONMENTAL
CONTROL BOARD, and JOHN DOE #1
THROUGH JOHN DOE #10

                     Defendants.
-----------------------------------------------------------X
VITALIANO, D.J.

      The Great Recession of 2008 plunged the nation into a frightening crisis in the home mortgage market. In the darkness of the crisis, many home owning families saw their dreams dashed. Here, we finally see, and warmly welcome, the light of a new day.

      In this long-lived foreclosure action, plaintiff Eastern Savings Bank, fsb, ("ESB"), without objection, moves to (i) vacate the February 14, 2014 Judgment of Foreclosure and Sale ("JFS") pursuant to Federal Rule of Civil Procedure 60(b)(5), and (ii) discontinue the action pursuant to Rule 41(a)(2). For the reasons that follow, ESB's motion is granted.

## Background

      Nearly six years ago, ESB brought this mortgage foreclosure action against Peter K. Strez, Catherine A. Strez (collectively, the "borrowers"), and a collection of nominal defendants – the City of New York Environmental Control Board ("ECB"), and John Doe #1 through John Doe #12. *See* Dkt. No. 1. On July 26, 2013, the Court granted plaintiff's motion for summary judgment of foreclosure, denied the borrowers' cross-motion for summary judgment, dismissed the John Doe defendants, and granted plaintiff's motion for default against the non-appearing

1

ECB. *See* Dkt. No. 41. On December 23, 2013, judgment was entered against the borrowers in the amount of $587,615.47, and against the defaulting ECB, thereby foreclosing ECB's interest in the subject premises. Dkt. No. 48. The JFS was entered on February 14, 2014. Dkt. No. 51.

Following an appeal to the Second Circuit, the borrowers entered into a settlement, resulting in a Forbearance Extension Agreement (the "Agreement"), which was approved by this Court on June 25, 2015. Dkt. No. 67. The Agreement, *inter alia*, provided that:

> (i) if the Borrower reinstates the Note and Mortgage[,] [ESB] [would] undertake to vacate the JFS without prejudice or (ii) if the full contractual payoff of the Note and Mortgage [was] made[,] [ESB] [would] report to the court the [JFS] as fully satisfied by voluntary payment.

Dkt. No. 67 at 8.

The borrowers fulfilled their obligation to ESB in or around November 2016. *See* Dkt. No. 68 ("Mot. to Vacate"). In short, according to ESB, "the borrowers fully performed" under a subsequent extension of the original Agreement, "pursuant to which it was agreed upon [b]orrowers' strict compliance[,] no sale would occur, the subject Mortgage would be reinstated, and the JFS vacated." Mot. to Vacate at 1. The pending motion would restore the lending relationship *ante bellum*.

## Discussion

Rule 60(b)(5) empowers a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding [when] . . . the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[,]" if the motion has been made within a "reasonable time." Fed. R. Civ. P. 60(b)(5) & (c)(1); *cf. PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) ("In considering whether a [Rule 60(b)(5)] motion is timely, we must scrutinize the

particular circumstances of the case, and balance the interest in finality with the reasons for delay."). The elapse of time – a sure enemy of litigation – is a less significant consideration where adverse interests join in the application.

At the same time, the Second Circuit has cautioned that vacatur of judgment following settlement should not be granted as a matter of course. *See Mfrs. Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 385 (2d Cir. 1993). In *United States Bancorp Mortgage Co. v. Bonner Mall Partnership*, the Supreme Court similarly cautioned against the use of vacatur following settlement absent a showing of "equitable entitlement to the extraordinary remedy of vacatur." 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Indeed, "[s]ince 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 51 F. Supp. 2d 314, 317 (S.D.N.Y. 1999) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). The trend in this circuit, then, is that judgments should be vacated only after a careful balancing of "the interests of honoring settlements reached by the parties against the public interest in the finality of judgments and the development of decisional law." *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, 177 F.R.D. 184, 186 (S.D.N.Y. 1998) (citations omitted).

Here, it appearing from the unopposed representations of ESB that the borrowers are now able to fulfill, and have been fulfilling, their obligations under the home mortgage agreement with ESB, applying the JFS prospectively, following the successful negotiation of and compliance by the Strezes with the Agreement, is no longer equitable. Moreover, no litigant has opposed relief from the judgment. Indeed, it bears repeating that there is no opposition to the motion from any nominal or third party, nor, at this juncture, is any such opposition even conceivable. To be sure, "[n]othing before the Court suggests that the parties are attempting to

3

'game the system' in some fashion." *Am. Home Assur. Co. v. Kuehne & Nagel (AG & CO.) KG*, No. 06 CIV. 6389 (JLC), 2010 WL 1946718, at *2 (S.D.N.Y. May 7, 2010) (citing 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure.* § 3533.10.2 at 597 (3d ed. 2008)).

An appropriate balancing of competing interests tips heavily in favor of vacating the JFS. Quite frankly, the concerns that would ordinarily militate against permitting settling parties to contract around a litigated judgment are of little or no relevance in this context. Those contrary interests zero in on public policy values in the finality of judicial proceedings and the collateral impacts such absence of finality might have on the development of decisional law. Decisional law was hardly advanced in this proceeding. *See Am. Home Assur. Co.*, 2010 WL 1946718, at *2. The litigation was quite simply an action to foreclose on a home mortgage – an unfortunate, standard and all too frequent occurrence. Nor, though final for purposes of procedural rules and appellate rights, was the judgment ever truly final in a practical sense. Quite to the contrary, the relationship of the parties did not end with a decision entered on the foreclosure claim. The borrowers remained in their home and they entered into a forbearance agreement with the lender – years ago.

If there is a public policy interest of value here, it is that of New York's, which places a very high premium on keeping homeowners in their homes and rehabilitating mortgage lending relationships. *Cf.* 77 N.Y. Jur. 2d Mortgages §§ 1, 481. In fact, prompted by the Great Recession, the very calamity that brought these parties to Court, New York imposed court regulations to slow the mortgage foreclosure process, requiring court conferences with a view towards modifying mortgage contracts and avoiding foreclosures. *See* C.P.L.R. § 3408; N.Y. Ct. R. 202.12-a, *amended by* 2016 NEW YORK COURT ORDER 0039 (C.O. 0039). New York

also recognizes, moreover, a right of redemption which permits homeowners to redeem the mortgaged property, even after foreclosure proceedings have begun, upon tender of the entire amount due on the loan. *See* 78 N.Y. Jur. 2d Mortgages § 404 ("The mortgagor's right to redeem is a necessary and essential part of every mortgage, and the right will be read into the instrument, by law, if the instrument does not expressly provide for redemption.").

Simply, in the case of home mortgage foreclosure, New York's public policy favors restoring the parties to the lending arrangement positions they occupied before the events which led to default and foreclosure. That is precisely what the parties ask the Court to do by vacating the judgment and restoring them to the relationship that existed between them *ante bellum*. Consequently, in weighing the factors articulated by the Second Circuit, this case, in this context, and in these circumstances, amply qualifies as one to be treated as an exception to the general rule of preserving the finality of judgments. *See Tommy Hilfiger Licensing, Inc. v. Costco Companies, Inc.*, No. 99CIV3894LMMJCF, 2002 WL 31654958, at *2 (S.D.N.Y. Nov. 25, 2002); *J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay Ins. Co.*, 153 F.R.D. 36, 38 (W.D.N.Y. 1994).[1]

The companion branch of ESB's motion flows from Federal Rule 41(a)(2), allowing dismissal at a plaintiff's request by court order on "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a [Rule 41(a)(2)] dismissal is without prejudice." *Id.* Given the vacatur of the JFS and the satisfaction of its contractual obligations by the borrowers, the Court grants this relief as well.

---

[1] ESB represents that the Strezes satisfied their outstanding obligations to ESB approximately one month before ESB moved to vacate, which was well within the "reasonable time" standard anticipated by Rule 60.

## Conclusion

For the reasons set forth above, ESB's motions to (i) vacate the February 14, 2014 Judgment of Foreclosure and Sale is granted and (ii) the action is discontinued.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to vacate the February 14, 2014 Judgment of Foreclosure and Sale and to close this case.

So Ordered.

Dated: Brooklyn, New York
February 7, 2017

Judge Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge